Charles Macedo
*cmacedo@arelaw.com*
Chester Rothstein
*crothstein@arelaw.com*
Marc J. Jason
*mjason@arelaw.com*
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue
New York, NY  10016
(212) 336-8000 (main)
(212) 336-8001 (facsimile)

Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- x

| | |
|---|---|
| THE BLU MARKET, INC., | **Civil Action No.** _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| GG OYUN BILISIM YAZILIM VE PAZARLAMA A.S., | |
| Defendant. | |

-------------------------------------------------------------- x

Plaintiff The BLU Market Inc. ("BLU" or "Plaintiff"), by and through its counsel

Amster, Rothstein, and Ebenstein, LLP, for its Complaint against GG Oyun Bilisim

Yazilim Ve Pazarlama A.S. (a/k/a GG Yazilim Bilisim A.S., a/k/a Gram Games)

("Gram" or "Defendant"), alleges as follows:

1.      This is a civil action seeking injunctive relief and damages under Section

512(f) of the Digital Millennium Copyright Act ("DMCA").

2.      This case arises from an improper assertion of copyright infringement

along with a series of demands made by Gram to third-party Apple Inc. ("Apple") that

Apple take down from Apple's App Store for iOS devices ("Apple's App Store"), BLU's

mobile device application ("App") entitled "Qubed" ("BLU's Qubed App" or "Qubed"),
which had been available on Apple's App Store continuously since at least as early as on
or about December 22, 2015.

3.    The improper infringement claims and take down notifications were made
and continued to be made by Gram to Apple, even after Gram received:

> a. evidence of the falsity of the factual allegations made under oath
>    by Gram as part of its takedown demands;
>
> b. an explanation of the meritorious defenses under the facts and law
>    to any claim of copyright infringement by BLU; and
>
> c. a written demand that Gram withdraw its demand to Apple that
>    Apple remove Plaintiff's Qubed App from Apple's App Store.

## PARTIES

4.    Plaintiff is a corporation organized and existing under the laws of the State
of New York, with a principal place of business at 400 Broome Street, New York, NY
10013.

5.    On information and belief, Defendant is a corporation organized and
existing under the laws of Turkey, with a principal place of business at Bostanci
Mahallesi, Teyyareci Resmi Sokak Mendirek Apartmani, No: 48/2 D: 11 Kadikay -
Istanbul TURKEY.

## JURISDICTION AND VENUE

6.    Upon information and belief, Gram is transacting business within this
judicial district and is subject to the jurisdiction of this Court pursuant to the laws of this
State and Rule 4 of the Federal Rules of Civil Procedure.  By means of illustration, upon

information and belief, Gram (i) sells software products to customers within this judicial

district and elsewhere throughout this State; and (ii) has purchased advertising space for

Gram's 1010! App. (as defined below) from at least one vendor within this judicial

district.

7.      This Court has subject matter jurisdiction over this claim pursuant to the

Copyright Act (17 U.S.C. §§ 101 et seq.), 28 U.S.C. §§ 1331 and 1338.

8.      On information and belief, Defendants are subject to the general and

specific jurisdiction of this Court.

9.      Venue is proper pursuant to 28 U.S.C. §§ 1391.

## FACTUAL ALLEGATIONS

10.     BLU is, *inter alia*, a developer of software products, and specifically

mobile applications for use with, *inter alia,* Apple products, which applications BLU has

offered for sale and offers for sale and for download onto mobile devices in United States

commerce through Apple's App Store.

11.     One of BLU's Apps, which BLU, until Gram interfered, offered for sale

and for download in United States commerce through Apple's App Store is a block-based

puzzle game called "Qubed."

12.     BLU had offered Qubed for sale and download on Apple's App Store

since at least as early as on or about December 22, 2015.

13.     Upon information and belief, Gram is, *inter alia*, a developer of software

products, and specifically Apps which it offers for sale and for download in United States

commerce through at least Apple's App Store.

14.    Upon information and belief, one of Gram's Apps, which it offers for sale and for download in United States commerce through Apple's App Store is a block-based puzzle game called "1010!" ("Gram's 1010! App" or "1010!").

15.    Puzzle block games have an origin far back in history and are typified by a playing field made up of a grid of rows and columns of squares, where square blocks are placed on a board and/or moved by a player around the playing field.

16.    On information and belief, on or about January 11, 2016, Defendant submitted the first of multiple formal written notifications to Apple (the "Gram's App Store Notification" or "Notification") demanding that Apple remove or "take down" Qubed from the App Store.

17.    Apple through its appstorenotices@apple.com email account sent to BLU's representative on or about January 11, 2016, an email summarizing the Notification as follows:

> On Jan 11, 2016 at 12:58 PM, appstorenotices@apple.com wrote:
> Dear Sir or Madam,
> **Please include APP55021 in the subject line of any future correspondence on this matter.**
> On 1/10/2016, we received a notice from GG Yazilim Bilisim A.S. ("Complainant") that Complainant believes the app listed below infringes its intellectual property rights.  In particular, Complainant believes you are infringing its copyright.  Please see their comments below.
> Developer: The Blu Market
> Provider: Blu Market INC., The
> App Title: Qubed
> Apple ID: 1059045195
> Comments from Complainant: Our claim is that this application is exact clone of our game. In particular:
> - They replicate the gameplay organization and experience of the original game, completely.
> AND
> - They incorporate imagery and artistic style entirely from the original game.
> It is our claim this game that is in no way unique or different from the original game as created by us. This game is the exact clone

-You can reach Complainant through Kasim Zorlu (email:kasim@gram.gs),
copied on this email. Please exchange correspondence directly with Complainant.
We look forward to receiving written assurance that your application does not
infringe Complainant's rights, or that the parties are taking steps to promptly
resolve the matter. Please keep us apprised of your progress.
Please note that during the course of this matter:
1. Correspondence to Apple must include the reference number noted above in
the subject line and copy the other party. All correspondence sent to Apple may
be shared with the other party.
2. Written assurance of rights may include confirmation that your application
does not infringe Complainant's rights, an express authorization from
Complainant, or other evidence acceptable to Apple, and should include
documentation wherever possible.
3. Should you choose to remove your application (for example, while you make
any necessary changes), visit iTunes Connect
athttp://itunesconnect.apple.com and access your app in the Manage Your
Application module.
Click on the "Rights and Pricing" button from the App Summary Page,
Click on the "Deselect All" button to uncheck all App Store territories, and
Click on the "Save Changes" button
4. Developers with a history of allegations of repeat infringement, or those who
misrepresent facts to Apple and/or the Complainant are at risk of termination from
the Developer Program.
5. Failure to respond to the Complainant or to take steps toward resolving a
dispute may lead to removal of the app(s) at issue as in violation of the App Store
Review Guidelines and/or the iOS Developer Program License
Agreement. Please keep Apple apprised of your progress.
Thank you for your immediate attention.
Sincerely,
Pablo
ďŁż Apple Legal | Apple | 1 Infinite Loop | Cupertino | CA | 95014
|AppStoreNotices@apple.com

18.     The Gram's App Store Notification contained at least the following

material misrepresentations and false statements by Gram:

> a. "Our claim is that this application is **exact clone of our game**" and
>
> "This game is the **exact clone**" (emphasis added).
>
> b. "- They [the BLU Qubed App] replicate the gameplay organization
>
> and experience of the original game, **completely**" (emphasis
>
> added).

      c. "- They [the BLU Qubed App] incorporate imagery and artistic style **entirely** from the original game" (emphasis added).

      d. "It is our claim this game that is **in no way unique or different from** the **original** game **as created by us**" (emphasis added).

19.    At minimum, it is indisputable that each of these assertions is untrue as illustrated in the letter from the undersigned dated May 20, 2016 (attached hereto as Exhibit A). At a minimum, after receiving the letter attached as Exhibit A, Defendant could not have had a subjective good faith belief that these statements were true and should have withdrawn its objection to Apple with respect to the BLU Qubed App.

20.    The following material differences between BLU's Qubed App and Gram's 1010! App demonstrate the assertions included by Defendant in its Gram's App Store Notification are false:

      a. **Different Shaped Pieces:** As Gram's counsel illustrated in her letter attached as Exhibit B, BLU's Qubed App did not include at least one of the pieces included in the 1010! App:

A square four-block piece  Not observable in current version of Qubed

      Further, BLU's Qubed App has many additional pieces not included in Gram's 1010! App including, at least the following new and different pieces:



These different shapes not only create a different aesthetic appearance but also significantly change the operation and strategy of the game.

       b. **Different Color Pieces**: Unlike Gram's 1010! App, in which each piece is always the same color, BLU's Qubed App randomly assigns a different color to each piece as it is added during gameplay.  Also, none of the random colors used for pieces in BLU's Qubed App matches the fixed colors used by Gram's 1010! App.

       c. **Different Boards <u>and</u> Different Elements with Each Board:** As the following annotations of Gram's counsel's comparison of Gram's 1010! App board and BLU's Qubed App board illustrate, not only are the generic 10-by-10 grids located in different locations on the screen, the limited design elements otherwise included in 1010! like the trophy and pause button are not included in Qubed, the location of the score is below the grid in Qubed rather than above the grid in 1010!, and Qubed includes additional design elements representing functions like "coins" not included in 1010!  Thus, the overall aesthetic appearance as well as the operation of the games are different.



Trophy not included and score in different location

You Have Coins is an added

Different symbol and location for options button

Disappears from left to right

Disappears from right to left

Coin Store button added

Different symbol and location for options button

*1010!*

*Qubed*

Mark Up of Your Letter shown in red

**d. Other Screens Are Different:** BLU's Qubed App and Gram's 1010! App have pre- and post-game screens that not only differ in number and appearance but also offer different functions that impact the operation of the game:



Different Splash Screens

Different Operation -- Extra Screen before entering game

BLU's Qubed App          Gram's 1010! App          Gram's 1010! App

Different post-game screens



BLU's Qubed App                    Gram's 1010! App              Gram's 1010! App

Qubed allows purchase of coins
and a unique screen not present
in 1010!



BLU's Qubed App

       e. **Inclusion of Coins**. Unlike Gram's 1010! App, BLU's Qubed App

includes the use of "coins", which not only results in the different graphic

imagery and additional screens shown above, but also impacts the gameplay

experience to provide a different experience from that of the 1010! game

experience. In other words, the BLU Qubed App does not "completely"

"replicate the gameplay organization and experience of" Gram's 1010! App. At

least this aspect of BLU's Qubed App makes it "unique and different" from

Gram's 1010! App.

21.     On information and belief, Defendant subjectively knew that at a minimum each of the emphasized statements and the aggregate of them were untrue at the time they were made in the original Gram's App Store Notification.

22.     In the alternative, Defendant should have known, if it had acted with reasonable care or diligence, or would have had no substantial doubt had it been acting in good faith, that at a minimum each of the emphasized statements and the aggregate of them were untrue at the time they were made in the original Gram's App Store Notification.

23.     On information and belief, Defendant submitted additional duplicate and/or similar notifications repeating these falsehoods and continuing the demand that Apple take down the BLU Qubed App.

24.     On or about January 19, 2016, BLU responded directly to Apple as follows:

> On Jan 19, 2016 at 4:21 PM, steven@theblumarket.com wrote:
> Dear Audrey,
> All allegations made are clearly false, we have not copied, or violated any trademarks or infringed on any IP rights. We have notified our legal dept. and they will be reaching out directly to the inquirer with a counter suit for damages this might reference in accordance with our current legal fees as well as other timely damages as they occur.
> We hope you understand, and close this claim so we can move on appropriately, our game does not have any trademark or intellectual property similarities and it's not possible to hold a company against its right to create a game.
> Best,
>
> Steven
> Sent from my iPhone

25.     At least as of January 19, 2016, both Apple and Defendant were on notice that the facts included in the Complaint were "clearly false", and Defendant could not

have had a good faith belief they were true.

26.     On or about February 2, 2016, Gram apparently submitted a duplicate

and/or similar submission, which resulted in Apple through its

appstorenotices@apple.com email account advising Gram instead to pursue its original

Gram's App Store Notification, designated by reference number "APP55021".  On or

about February 2, 2016, BLU received a copy of the following email sent by Apple

through its appstorenotices@apple.com email address:

> On Feb 2, 2016 at 1:26 PM, appstorenotices@apple.com wrote:
>
> Dear Kasim and Sedef,
>
> **Please include APP55021 in the subject line of any future correspondence on this matter.**
>
> It appears that you have submitted a duplicate complaint.  The web form is for new matters only.  Please note that duplicate submissions will not expedite your matter, and may in fact delay the processing of your claim.
>
> We request that you contact the developer (cc'ed) directly to address any ongoing concerns regarding the app below, or address any information for Apple's consideration in email to <appstorenotices@apple.com> rather than through our web form.
>
> Developer: The Blu Market
> Provider: Blu Market INC., The
> App Title: Qubed
> Apple ID: 1059045195
> -
>
> Sincerely,
>
> Pablo
>
> ☐ Apple Legal | Apple | 1 Infinite Loop | Cupertino | CA | 95014 |

27.     After receiving a follow up message from Apple on or about May 10,

2016, indicating that the matter was still not resolved, BLU confirmed its belief that the

basis of the Notification was "false" as follows:

> On Wed, May 11, 2016 at 12:10 AM Steven Forkosh
> <steven@theblumarket.com<mailto:steven@theblumarket.com>>wrote:
>
> Dead all, we and our legal dept has reach out on this thread and privately
> MULTIPLE TIMES WITH NO RESPONSE! I don't understand ! Do they just
> keep resubmitted this false allegation? Why does this keep coming up after we
> reply every time with legal and get no response this is extremely unprofessional
> and ridiculous.. I have CC'ed my legal as well AGAIN.. I just can't understand
> why this keeps popping back up after we dealt with this 4 times already with these
> guys and they don't even answer back
>
> Sent from my iPhone

28.     Despite again being put clearly on notice that BLU considered Gram's

claim to be "false", Mr. Karamanci on behalf of Gram responded a few hours

later reiterating its previously made false claims (". . . we would like to move forward

with our claim, as described in our letter."):

> Begin forwarded message:
>
> From: Kaan Karamanci <kaan@gram.gs<mailto:kaan@gram.gs>>
>
> Subject: Re: Apple Inc. (our ref# APP55021)
>
> Date: May 11, 2016 at 3:53:57 AM PDT
>
> To: App Store Notices
> <AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com>>
>
> Cc: Sedef Ecevit <sedef@gram.gs<mailto:sedef@gram.gs>>
>
> Dear Audrey,
>
> We would like to state that we have not received any private messages from Blu
> or its attorneys and no substantive arguments were provided on the claim. The
> only messages are the poorly worded correspondence that you have also
> witnessed below. As such, we would like to move forward with our claim, as
> described in our letter. Your assistance on the matter would be greatly
> appreciated.
>
> Thank you,

| Kaan |
|------|

29.     On Thursday evening, May 18, 2016, BLU received the following

message from Apple notifying BLU that its Qubed App was taken down because "the

dispute . . . could not be resolved amicably between the parties.":

| |
|---|
| On May 18, 2016, at 11:09 PM, App Store Notices <appstorenotices@apple.com<mailto:appstorenotices@apple.com>>wrote:<br><br>Dear Sir or Madam,<br><br>**Please include APP55021 in the subject line of any future correspondence on this matter.**<br><br>We regret that the dispute regarding the app listed below could not be resolved amicably between the parties.  We have removed your application from the App Store.  Note that per the terms of your agreement with Apple that Apple may remove your application from sale if we feel it is necessary or prudent to do so.<br><br>Developer: The Blu Market<br><br>Provider: Blu Market INC., The<br><br>App Title: Qubed<br><br>Apple ID: 1059045195<br>-<br>For any questions relating to this matter, please contact GG Yazilim Bilisim A.S. (Gram Games) directly.  For any technical questions, please contact iTunes Connect:www.apple.com/itunes/go/itunesconnect/contactus<http://www.apple.com/itunes/go/itunesconnect/contactus>.<br><br>Sincerely,<br><br>Victoria<br><br>□ Apple Legal \| Apple \| 1 Infinite Loop \| Cupertino \| CA \| 95014 \| AppStoreNotices@apple.com<mailto:AppStoreNotices@apple.com> |

30.     Thus, on information and belief, Apple removed the BLU Qubed App

from its App Store in direct reliance upon one or more of: (i) Gram's statements in its

Gram's App Store Notification; and/or (ii) Gram's continuation of and failure to

withdraw its false assertions and allegations as contained in its original Gram's App Store

Notification and its continuing complaints.

31.     Shortly after receiving the May 18, 2016 email from Apple, counsel for

BLU responded confirming the meritless basis of Defendant's complaint and requesting

Defendant to withdraw its complaint and allow BLU's Qubed App to be reposted in

Apple's App Store:

---

From: Charles R. Macedo

Sent: Thursday, May 19, 2016 12:18 AM

To: appstorenotices@apple.com

Cc: BLU; Steven Forkosh; kaan@gram.gs; sedef@gram.gs

Subject: RE: Apple ref# APP55021 -- URGENT ACTION REQUESTED

Importance: High

URGENT: PROMPT ACTION REQUESTED

  Re:  APP55021

  Developer:  The Blu Market

  Provider:  Blu Market Inc., The

  App Title:  Qubed

  App ID: 1059045195

Dear Sir or Madam:

Our firm represents The BLU Market Inc. in this matter.

BLU Market categorically denies any claim of copyright infringement of its

---

game.

Complaint GRAM has failed to make a prima facie case of copyright infringement.

It has provided no copyright registration.

Its assertion is based on the misplaced notion that our client's Quebed App has the same "idea" as Gram's 1010 App.   This is not the type of subject matter that Copyright law protects.

Gram's claim is completely without merit.   The limited original elements of expression that Gram's 1010 App has are different from Quebed.

BLU has repeatedly responded to these emails denying Gram's assertion, and invited Gram to contact it.

If Gram does not immediately withdrawal with improper assertion and allow our client's app to be put back up for sale, our client will have not choice but to bring legal action for tortious interference with contract and seek monetary and injunctive relief from court.

As always, we are open to discuss this matter, but must have our client's app placed back for sale in the App store.

Best regards,

Charley Macedo

Charles R. Macedo

Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
Gen 212 336 8000
Fax 212 336 8001

www.arelaw.com<http://www.arelaw.com/>
cmacedo@arelaw.com<mailto:cmacedo@arelaw.com>
Dir 212 336 8074
Counsel for The BLU Market, Inc.

32.     The following morning, May 19, 2016, counsel for BLU sent a follow-up

email confirming to Apple and Defendant the baseless nature of Defendant's Notification

and again requesting Apple to reinstate the Qubed App in the Apple App Store:

From: cmacedo@ARELAW.com
Subject: RE: Apple ref# APP55021 -- URGENT ACTION REQUESTED
Date: May 19, 2016 at 11:52 AM
To: AppStoreNotices@apple.com, kaan@gram.gs, sedef@gram.gs
Cc: BLU@ARELAW.com, steven@theblumarket.com


URGENT: PROMPT ACTION REQUESTED

  Re:  APP55021

  Developer:  The Blu Market

  Provider:  Blu Market Inc., The

  App Title:  Qubed

  App ID: 1059045195

Dear Sirs or Madams:

Please find attached a letter we are sending by this email to Complainant Gram
(and Apple as a cc) in the above Apple Reference Complaint.  As you can see, we
have fully responded to the substance of this baseless assertion, and The BLU
Market Inc is being irreparably harmed by this baseless assertion and the
improper take down caused by Gram's improper assertion against BLU's Qubed
App from the App store.

We respectfully request Apple to reinstate the game to mitigate the damages to
BLU that are occurring every minute this popular game is not available.

Thank you for your time and attention to promptly resolve this matter.

Best regards,

Charley

Charles R. Macedo
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
212 336 8074

> www.arelaw.com<http://www.arelaw.com/>
> cmacedo@arelaw.com<mailto:cmacedo@arelaw.com>
>
> Counsel for The BLU Market Inc.
>
> Attachments:
>
> 1.    Letter Response to Complainant
>
> 2.    NY Action (to be filed)

33.    A true and correct copy of the attached letter dated May 19, 2016 is

attached hereto as Exhibit C.

34.    Later that same day of May 19, 2016, Apple responded by repeating its

message that the App was "removed from sale by Apple because we did not receive

confirmation from GG Yazilim Bilisim A.S. (Gram Games) that this matter had been

resolved":

> Begin forwarded message:
>
> **From:** App Store Notices <appstorenotices@apple.com>
> **Date:** May 19, 2016 at 6:20:35 PM EDT
> **To:** <steven@theblumarket.com>, <cmacedo@ARELAW.com>
> **Subject: Apple Inc. (our ref# APP55021)**
>
> Dear Sir or Madam,
>
> **Please include APP55021 in the subject line of any future correspondence on
> this matter.**
>
> Your app was removed from sale by Apple because we did not receive
> confirmation from GG Yazilim Bilisim A.S. (Gram Games) that this matter had
> been resolved.  However, upon receipt of written notification from GG Yazilim
> Bilisim A.S. (Gram Games) agreeing that the changes made to your app resolve
> this matter to GG Yazilim Bilisim A.S. (Gram Games)'s satisfaction, we may
> return your app to the App Store.  Please notify GG Yazilim Bilisim A.S. (Gram
> Games) directly of your changes and have GG Yazilim Bilisim A.S. (Gram
> Games) email us at appstorenotices@apple.com.

Sincerely,

Audrey

☐ Apple Legal | 1 Infinite Loop | Cupertino | CA | 95014
| AppStoreNotices@apple.com

35.    In response, BLU, through its counsel, responded by invoking a counter

notification under Section 512(g)(3) of the Copyright Act on or about May 19, 2016 at

8:13 PM:

Re:  Apple Ref# APP55021

Audrey,

I think you misunderstood my prior email.  Our client, The BLU Market Inc.
("BLU"), has not made changes to its app because GRAM's copyright claim does
not have merit. The letter we sent to GRAM makes this point very clear.

As the past email communications regarding this matter make abundantly clear,
we have attempted to contact GRAM to resolve this matter and have received no
response.  In fact, we have repeatedly cc'd Apple on our communications, and yet
GRAM has not responded to any of our requests to resolve this matter.

Pursuant to 17 U.S.C. § 512(g)(3), the following is BLU's **counter notification**,
with digital signature provided by BLU's attorney:

The removed application is identified as follows:

Developer:  The Blu Market
Provider:  Blu Market Inc., The
App Title:  Qubed
App ID: 1059045195

The BLU Market Inc. hereby affirms, under penalty of perjury, its good faith
belief that the Qubed application was removed or disabled as a result of mistake
following from an improper understanding of copyright law on the part of
Complainant GRAM as outlined in our letter submitted earlier today.

The BLU Market Inc.'s contact information is as follows:

The BLU Market INC.
400 Broome Street, 11th Floor

New York, NY 10013
1 212 219-3800

The BLU Market Inc. consents to the jurisdiction of Federal District Court for the
judicial district in which it is located, U.S. District Court for the Southern District
of New York, and The BLU Market Inc. will accept service of process from
GRAM or an agent thereof.

**Therefore, in accordance with 17 U.S.C. § 512(g)(2)(C), The BLU Market,
Inc. looks forward to the reinstatement of its Qubed application in the Apple
App Store within fourteen (14) business days, and hopefully sooner. As I am
sure you are aware, absent such reinstatement Apple Inc. will lose the
protections provided to it under 17 U.S.C. § 512 with regard to the damages
accruing to The BLU Market Inc. as a result of this erroneous claim for
copyright infringement brought by GRAM.**

Thank your for your assistance in reinstating Qubed App as promptly as
possible.

Best regards,


/Charles R. Macedo/
Charles R. Macedo
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
Gen 212 336 8000
Fax 212 336 8001
www.arelaw.com
cmacedo@arelaw.com
Dir 212 336 8074

Attorneys for The BLU Market Inc.



Sent from my iPhone

36.     Separately, in response to BLU's May 19, 2016 email, at 9:53 PM E.T.,

Gram responded to Apple's appstorenotices@apple.com email by maintaining its false

and misleading objection and noting that its counsel had separately sent a letter to BLU's

counsel:

> We would like to note that (1) this is the first time we have received direct correspondence from BLU; and (2) the letter makes numerous accusations and assertions that are factually and legally untrue. We have asked our outside copyright counsel to respond directly. We would be happy to provide Apple with a copy of our response if requested.
>
> Victoria, Audrey,
> We appreciate your help in reaching the correct resolution. Clone games are a nuisance and a drag on the hard work of creative talent that makes our App ecosystem the best in the world. It is also a burden on our consumers.
>
> Kaan

37.     As noted in Kaan's email, shortly before that email Gram's counsel,

Jennifer Kelly at Fenwick & West, sent a letter (Exhibit B attached hereto), which

ostensibly addressed the merits of Gram's assertion that Qubed infringed copyright rights

in 1010!, but actually (i) provided admissions illustrating that the statements in Gram's

original Gram's App Store Notification were factually false, and (ii) asserted specious

claims of copyright infringement.

38.     On or about Friday, May 20, 2016 at 6:02 PM, counsel for BLU

responded directly to counsel for Gram and sent a separate email to Apple's

appstorenotices@apple.com email address, outlining the factual and legal basis disputing

(i) the falsehoods set forth in the original Gram's App Store Notification, and (ii) that

Qubed infringed any valid copyright in 1010!.

39.     A true and correct copy of the letter to Gram's counsel is attached as

Exhibit A.

40.     In the May 20, 2016 email from BLU's counsel to Apple's

appstorenotices@apple.com email account, which also cc'd Gram's counsel, BLU's

counsel wrote:

**URGENT: PROMPT ACTION REQUESTED**

Re: APP55021

Developer: The Blu Market
Provider: Blu Market Inc., The
App Title: Qubed
App ID: 1059045195

Dear Sirs or Madams:

Please find attached the letter we sent to Complainant's counsel this evening. As you can see, each of the assertions contained in the original Complaint which was the basis of the takedown are factually untrue, and there is no legitimate basis to conclude the Qubed App infringes any copyrightable elements of Complainant's 1010! App.

Please repost the Qubed App as soon as possible.

It is unfortunate when baseless and persistent assertions prevent the public from enjoying such a popular app as Qubed.

Because Complainant is now represented by counsel, we have cc'd counsel instead of Messrs. Karamanci and Sedef.

Thank you for your assistance.

Charley

Charles R. Macedo
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, NY 10016
212 336 8074
www.arelaw.com
cmacedo@arelaw.com

41.     As of the filing of this Complaint, neither Gram nor Gram's counsel

responded to the May 20, 2016 letter from counsel or the email to Apple's

appstoresnotices@apple.com on which Gram's counsel was copied.

42.     When Apple took down the BLU Qubed App on or about May 18, 2016, Qubed could no longer be either (i) downloaded by players and potential players who had not previously downloaded it, or (ii) updated by players who had previously downloaded it.

43.     The effect of the takedown of Qubed by Apple is akin to a grant of a temporary restraining order and preliminary injunction without the substantive requirements for proof and likelihood of success on the merits, and without any of the procedural and substantive safeguards available to a defendant to compensate it for an improvidently granted takedown.

44.     BLU's business model for the BLU Qubed App is to offer the App to the public from the Apple App Store for no money.  BLU made money from the use of the BLU Qubed App on the Apple App Store from the new and indisputably different "coins" functionality of BLU's Qubed App.

45.     Gram's actions have interfered with BLU's ability to make money from the BLU Qubed App.

## COUNT I: 17 U.S.C. § 512(F) MISREPRESENTATION

46.     Plaintiff incorporates by reference as if fully set forth herein the averments contained within the preceding paragraphs 1 through 45, inclusive.

47.     BLU's Qubed App does not infringe any copyright owned by Defendant.

48.     BLU's Qubed App does not infringe any valid copyright rights in Gram's 1010! App because, *inter alia*, (i) BLU's Qubed App was not copied from Gram's 1010! App, and (ii) any aspects of Gram's 1010! App that are similar to BLU's Qubed App are non-protectable ideas.

49.    As Gram's counsel explained in an article on or about May 1, 2013,

"When people hear the term cloning, they think that that necessarily means that it's

wrongful, that copying is necessarily copyright infringement.  There's an important

distinction because if you copy elements of a game that are not protectable by copyright,

that's o.k." Jennifer Lloyd Kelly, ***Cloned at Birth: The Story of Ridiculous Fishing*** at

https://www.fenwick.com/news/Pages/Cloned-at-Birth-The-Story-of-Ridiculous-

Fishing.aspx (May 1, 2013).

50.    This statement of Gram's counsel is consistent with the December 2011

fact sheet for Copyright Registration of ***Games***, which states:

> Copyright does not protect the idea for a game, its name or
> title, or the method or methods for playing it. Nor does
> copyright protect any idea, system, method, device, or
> trademark material involved in developing, merchandising,
> or playing a game. Once a game has been made public,
> nothing in the copyright law prevents others from
> developing another game based on similar principles.
> Copyright protects only the particular manner of an author's
> expression in literary, artistic, or musical form.

U.S. COPYRIGHT OFFICE, FL-108, COPYRIGHT REGISTRATION OF **GAMES**

(2011).

51.    Gram knew or should have known that the factual statements it made to

Apple in the Gram's App Store Notification were materially and factually false.

52.    Gram knew or should have known that the BLU Qubed App was only

similar to Gram's 1010! App in its idea, or the method or methods for playing it, but not

in the original expression used by Gram.

53.    On information and belief, Defendant had actual subjective knowledge of

the contents of the Qubed App and that it did not infringe any valid copyright owned by

Defendant on the date Defendant sent Apple the Gram's App Store Notification. With

this actual subjective knowledge, Defendant acted in bad faith when it sent the takedown notice, knowingly and materially misrepresenting that it had concluded that the Qubed App was infringing.

54.     In the alternative, Defendant should have known, if it had acted with reasonable care or diligence, or would have no substantial doubt had it been acting in good faith, that the Qubed App did not infringe any valid copyrights owned by Defendant on the date it sent Apple its Gram's App Store Notification and its follow-up under the DMCA.

55.     On information and belief, Defendant had actual subjective knowledge that the contents of the Qubed App were not an "exact clone" of the 1010! App on the date Defendant sent Apple the Gram's App Store Notification. With this actual subjective knowledge, Defendant acted in bad faith when it sent the takedown notice, knowingly and materially misrepresenting that the Qubed App was an "exact clone" of Defendant's 1010! App.

56.     In the alternative, Defendant should have known, if it had acted with reasonable care or diligence, or would have no substantial doubt had it been acting in good faith, that the contents of the Qubed App were not an "exact clone" of the 1010 App on the date it sent Apple its Gram's App Store Notification and its follow-up under the DMCA.

57.     On information and belief, Defendant had actual subjective knowledge that the contents of the Qubed App did not "completely" "replicate the gameplay organization and experience" of the 1010! App on the date Defendant sent Apple the Gram's App Store Notification. With this actual subjective knowledge, Defendant acted

in bad faith when it sent the takedown notice, knowingly and materially misrepresenting that "They [BLU] replicate the gameplay organization and experience of the original game, **completely**" (emphasis added).

58.     In the alternative, Defendant should have known, if it had acted with reasonable care or diligence, or would have no substantial doubt had it been acting in good faith, that the Qubed App did not "completely" "replicate the gameplay organization and experience" of the 1010! App on the date it sent Apple its Gram's App Store Notification and its follow-up under the DMCA.

59.     On information and belief, Defendant had actual subjective knowledge that the contents of the Qubed App did not "entirely" "incorporate imagery and artistic style" from the 1010! App on the date Defendant sent Apple the Gram's App Store Notification. With this actual subjective knowledge, Defendant acted in bad faith when it sent the takedown notice, knowingly and materially misrepresenting that "They [the BLU Qubed App] incorporate imagery and artistic style **entirely** from the original game" (emphasis added).

60.     In the alternative, Defendant should have known, if it had acted with reasonable care or diligence, or would have no substantial doubt had it been acting in good faith, that the Qubed App did not "entirely" "incorporate imagery and artistic style" from the 1010! App on the date it sent Apple its Gram's App Store Notification and its follow-up under the DMCA.

61.     On information and belief, Defendant had actual subjective knowledge that the contents of the Qubed App had at least some "unique or different" aspects from the 1010! App on the date Defendant sent Apple the Gram's App Store Notification.

With this actual subjective knowledge, Defendant acted in bad faith when it sent the takedown notice, knowingly and materially misrepresenting that "It is our claim this game that is **in no way unique or different from** the **original** game **as created by us**." (emphasis added).

62.     In the alternative, Defendant should have known, if it had acted with reasonable care or diligence, or would have no substantial doubt had it been acting in good faith, that the Qubed App had at least some "unique or different" aspects from the 1010! App on the date it sent Apple its Gram's App Store Notification and its follow-up under the DMCA.

63.     Defendant violated 17 U.S.C. § 512(f) by knowingly materially misrepresenting that the BLU Qubed App infringed Gram's 1010! App.

64.     As a direct and proximate result of Defendant's actions, Plaintiff has been injured substantially and irreparably. Such injury includes, but is not limited to, (i) the loss of revenue, which was a direct result of the diminished access and use of the BLU Qubed App by the public, (ii) the reputational harm stemming from the instantaneous loss of the use of the App, and (iii) the financial and personal expenses associated with responding to the claim of infringement.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff prays for judgment as follows:

1.     Injunctive relief restraining Defendant, its agents, servants, employees, successors and assigns, and all others in concert and privity with Defendant, from bringing any lawsuit or threat against Plaintiff for copyright infringement in connection with the Qubed App, including, but not limited to, the Qubed App's publication,

distribution, performance, display, or licensing, via Apple's App Store or other public or private portal;

      2.      Injunctive relief requiring Defendant to rescind Gram's App Store Notification.

      3.      Injunctive relief enjoining Defendant from submitting future take down notifications regarding Qubed or any substantially similar App of Plaintiff to Apple's App Store or other public or private portal.

      4.      Damages according to proof;

      5.      Attorneys' fees pursuant to 17 U.S.C. § 512(f), other portions of the Copyright Act including Section 505, on a Private Attorney General basis, or otherwise as allowed by law;

      6.      Plaintiff's costs and disbursements; and

      7.      Such other and further relief as the Court shall find just and proper.

Plaintiff hereby requests a jury trial for all issues triable by jury including, but not limited to, those issues and claims set forth in any amended complaint or consolidated action.

Dated:  May 23, 2016
        New York, New York

                      THE BLU MARKET, INC.

                      By:                        
                          Charles Macedo
                          *cmacedo@arelaw.com*
                          Chester Rothstein
                          *crothstein@arelaw.com*
                          Marc J. Jason
                          *mjason@arelaw.com*
                          AMSTER, ROTHSTEIN & EBENSTEIN LLP

90 Park Avenue
New York, NY  10016
(212) 336-8000 (main)
(212) 336-8001 (facsimile)

Attorneys for Plaintiff